**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**WILLIE L. INGRAM,**

      **Plaintiff,**

**v.**                                                  **Case No. 8:07-cv-1591-T-27TBM**

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**[1]

The Plaintiff seeks judicial review of the denial of his claims for Social Security disability benefits and Supplemental Security Income payments. Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

Plaintiff was forty-six years of age at the time of his administrative hearing. He has a GED and vocational training in commercial truck driving. His past relevant work was as a warehouse worker, forklift operator, over-the-road truck driver, route delivery driver, dump and flatbed truck driver, and ready-mixer (cement) driver. Plaintiff filed applications for

---

[1] This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987. *See also* M.D. Fla. R. 6.01(c)(21).

disability benefits and Supplement Security Income ("SSI") payments in July 2005, alleging disability as of March 15, 2005, by reason of pain and weakness in his knees, shortness of breath, and sarcoidosis.[2]  The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge ("ALJ").  Plaintiff was represented by counsel and testified in his own behalf.  By Plaintiff's testimony, he could no longer work at any job because of his joint pain and shortness of breath.  He attempted to work as a temporary truck driver after his alleged onset date.  He worked a couple of days in April and May 2005, but claims that he could not keep up with the work because his knee got swollen and he was hospitalized.  He indicated that he did not think he could perform his past work any longer because he could not constantly get in and out of trucks and push dollies up and down ramps.  Plaintiff takes Ibuprofen for pain and it helps because it does not make him groggy and sleepy all the time.  However, it never completely stops the joint pain.  Cold weather makes his pain worse.  He tries not to take other [stronger pain] medication unless he is in excruciating pain, "like when I get the thing from pain management in my back."  He takes the stronger pain medication so he can rest. Plaintiff also takes sleeping pills at night so the pain in his hips or arthritis/rheumatism does not keep him up.  Plaintiff no longer takes Prednisone and has lost about fifteen pounds of the forty some pounds he gained while taking it.

---

[2]Sarcoidosis is an inflammatory disease that begins in the lungs.  In time, it can affect any organ, including the liver, skin, heart, nervous system and eyes.  While sarscoidosis may often go away on its own in two to three years, some people have symptoms for a lifetime. Treatment typically consists of strong anti-inflammatory medications. http://www.mayoclinic.com/health/sarcoidosis/DS00251 (last visited June 20, 2008).

Plaintiff also complained of sinus problems and hearing loss in his right ear. He had an ultrasound of his liver done but does not know if any of his symptoms are attributed to such. Temperature extremes and sunlight make Plaintiff itch, which he attributes to Plaquenil. He even gets itchy from general activity like getting out of the shower, drying off, and putting on his shoes and socks.

According to Plaintiff, he can walk a block and a half before his knee swells. If he walks for exercise, he takes Advair (asthma medication) to help with his breathing. Plaintiff indicated that it probably is easer for him to walk than to stand because standing for awhile hurts the joints of his left leg. As for sitting, Plaintiff testified that a nerve or something in his back causes numbness on the back of both legs (more on the right) and in two toes on his right foot and his elbows, so he tries to get up and move about. As for lifting things, Plaintiff stated that he takes out the garbage and checks the mail. He has difficulty breathing upon repetitive work activity. By Plaintiff's account, he tries to watch television but most of his days are spent lying around in bed trying to ease the pain. He has more bad days than good. *See* Plaintiff's testimony (R. 350-62).

Testimony was also obtained from Joyce Courtright, a vocational expert ("VE"). Citing to the Dictionary of Occupational Titles, the VE testified that each of Plaintiff's past jobs was classified as either medium or heavy exertional work activity. (R. 364). She testified first upon a hypothetical which, in addition to Plaintiff's age, education, and work experience, assumed the ability to perform light exertional work that did not require more than frequent climbing, balancing, stooping, crouching, kneeling, and crawling or

3

concentrated exposure to cold.[3] Accepting those limitations, the VE testified that Plaintiff would not be able to perform any past relevant work. When asked by the ALJ whether the need to avoid concentrated exposure to cold would interfere significantly with the occupational base of light and sedentary unskilled work, the VE responded that it would not. Upon a second hypothetical which assumed the ability to perform sedentary exertional work that did not require climbing ladders or stairs, crouching, kneeling, and crawling; exposure to dangerous moving machinery or unprotected heights, concentrated chemicals, heat, cold, dust, fumes, gasses and other air pollutants; and more than occasional balancing and stooping; the VE testified work would be available in the areas of manual work assembly, production inspection, and order and complaint [clerking]. She testified further that the jobs existed in substantial numbers in the local and national economy. Lastly, the VE testified that if, secondary to pain and the effects of medication, the individual was unable to sustain sedentary-type activity for a full eight-hour day, forty hours a week, all competitive employment would be precluded. *See* VE's testimony (R. 363-66).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary.

By her decision of March 30, 2007, ALJ found that while Plaintiff has severe impairments related to sarcoidosis, inflammatory joint disease of the knees, chronic sinusitis, elevated liver enzymes, and facial lesions, he nonetheless had the residual functional capacity

---

[3]This hypothetical subsumes the residual functional capacity assessments completed by nonexamining, state agency doctors. *See* (R. 182-89, 207-14, 364).

to perform a limited range of sedentary exertional work.[4]  Upon this finding and the testimony of the VE, the ALJ concluded that, while Plaintiff could not perform any past work, he could perform jobs available in the local and national economy including those of a manual assembler, production inspector, and order clerk.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 20-25).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might

---

[4]Specifically, the ALJ found that Plaintiff could lift/carry/push/pull ten pounds occasionally and five pounds frequently; stand/walk for two hours and sit for six hours; occasionally balance and stoop but never climb, crouch, kneel, or crawl; not have concentrated exposure to chemicals, heat, cold, dusts, fumes, gases, or air pollutants; and not have any exposure to moving machinery or unprotected heights.  (R. 21-22).

5

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles,* 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ erred when she failed to consider the Claimant's back and spinal impairments while determining the Claimant's residual functional capacity;

(2) The ALJ erred by not considering the Claimant's obesity, by failing to comply with SSR 02-01p and failing to consider the impact of the Claimant's obesity on [his] ability to work; and

(3) The ALJ failed to consider the combined effect of all impairments.

These claims are interrelated and thus addressed together. By his first claim, Plaintiff argues that the ALJ erred by not addressing his back and spinal impairments and his complaints of pain related to such, particularly when assessing his residual functional capacity.[5] He summarily asserts that the pain associated with these conditions "would without a doubt affect" his ability to sustain sedentary work as found by the ALJ. Similarly, by his second claim, Plaintiff argues that the ALJ erred by not mentioning his obesity and addressing it in accordance with Social Security Ruling ("SSR") 02-01p given that the medical records clearly document a history of obesity (a height of 6' 2" and weight between 260 and 300 pounds). He also faults the ALJ for failing to "account for the limitations that obesity can create, as well as the compounding effects that obesity may have on other

---

[5]Plaintiff points to the following: an assessment of lumbar radiculopathy in December 2006; a MRI in January 2007 with results showing mild spinal stenosis at L3-4, mild to moderate spinal stenosis at L4-5, encroachment on the lateral recess by the generalized bulging disc, ligamentum flavum hypertrophy, and mild facet arthropathy changes; and records from a pain management clinic in 2007 (purportedly) showing that he had epidural injections to ease lower back and hip pain on four occasions. (Doc. 14 at 4-5).

7

impairments." Plaintiff contends that obesity symptoms "could further limit [his] ability to sustain work activity and it is very likely that [the obesity symptoms] would aggravate his knee and back conditions," and provide additional support for his subjective complaints.[6] Lastly, Plaintiff argues that the ALJ erred by failing to address the degree of impairment caused by the combination of impairments and not stating the weight given to each item of evidence. In light of these allegations of error, Plaintiff urges the court to award benefits or reverse and remand the case for further hearing. (Doc. 14 at 3-8).

The Commissioner counters that the ALJ addressed Plaintiff's back and spinal impairments by noting that Plaintiff has inflammatory joint disease and experiences pain and numbness in his back and legs. The Commissioner points out that Plaintiff's chief complaint was knee pain, Plaintiff failed to mention back pain as a limitation on his written application, Plaintiff did not identify back pain as a reason for his inability to perform past work when addressing such at the hearing, and back pain was not a limiting complaint during Plaintiff's consultative examination. As for Plaintiff's assertion that the ALJ failed to address certain medical records, the Commissioner contends an ALJ is not required to discuss each specific piece of evidence and cites to *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005), in support thereof. In any event, the Commissioner maintains that the information contained in those records does not identify any functional limitations that should have been considered by the ALJ. To the extent that Plaintiff complains that the ALJ erred by not finding his back impairment or obesity to be severe impairments at step two, the Commissioner asserts no

---

[6]In support of his first two claims, Plaintiff relies on *Williams v. Barnhart*, 186 F. Supp. 2d 1192 (M.D. Ala. 2002). There, the court found that remand was required where the ALJ failed to properly evaluate the severity of, as well as the combined effect of, several impairments at step two of the sequential analysis. *See id.* at 1197

8

error was committed because the ALJ found other severe impairments and such a finding is sufficient at that stage of the evaluation.[7] The Commissioner also asserts that the record does not reflect a twelve-month period wherein Plaintiff reported severe back pain or experienced the effects of extreme weight gain. While the Commissioner acknowledges SSR 02-1p, he suggests that the ALJ's failure to discuss Plaintiff's obesity (and back impairment) was harmless because Plaintiff identifies no limitations related to such that were not incorporated into the ALJ's residual functional capacity determination. Lastly, the Commissioner urges that the record reflects that the ALJ adequately considered the combined impact of Plaintiff's impairments. (Doc. 15 at 9-17).

Plaintiff is correct that the Act and pertinent case law require that the ALJ consider each impairment, as well as the combined effect of all a claimant's impairments. 42 U.S.C. § 423(d)(2)(B); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). In *Bowen v. Heckler*, 748 F.2d 629 (11th Cir. 1984), the court held that where a claimant has alleged a multitude of impairments, a claim for benefits may lie even though none of the impairments, when considered individually, is disabling. In such instances, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the claimant to be disabled.[8] *Id.* at 635; *Walker v. Bowen*, 826

---

[7]In support thereof, the Commissioner cites to *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987), *Council v. Barnhart*, No. 04-13128, at 4 (11th Cir. 2004) (unpublished), and *Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987).

[8]To the extent that obesity contributes to a claimant's impairments, the SSA's policy statements provide guidance in evaluating such. *See* SSR 02-01p, 2000 WL 628049 (S.S.A.). By this evaluation, obesity is recognized as a risk factor that increases one's chances of developing impairments in most body systems and may cause or contribute to mental impairments as well.

9

F.2d 996, 1001 (11th Cir. 1987). However, as the Commissioner notes, the claimant bears the burden of proving that he is disabled. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Further, it is the functional limitations imposed by a condition, rather than the mere diagnosis of the condition, that determines disability. *See Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). For the reasons set forth below, while the ALJ could have better stated her findings, I conclude that she has adequately considered the evidence, assessed the Plaintiff's residual functional capacity ("RFC"), and complied with the applicable standards such that a remand is not warranted on this claim.

Contrary to Plaintiff's urging, the ALJ recognized Plaintiff's complaint that he suffered pain and numbness in his back, particularly as such affected his legs. *See* (R. 23). Additionally, the decision reflects the ALJ's consideration of the medical evidence from Dr. Emma Ocampo. *Id.* In light of the ALJ's repeated reference to these records, I am obliged to find that the objective evidence set forth therein was also considered by the ALJ even if not specifically mentioned. As for this evidence, Dr. Ocampo assessed Plaintiff with lumbar radiculopathy in December 2006 on the basis of reported numbness in his toes and an MRI was ordered. (R. 221-22). The MRI, taken in January 2007, revealed mild spinal stenosis at L3-4, mild to moderate spinal stenosis at L4-5, encroachment on the lateral recess by the generalized bulging disc, short pedicle, ligamentum flavum hypertrophy, and mild facet arthropathy changes. (R. 239-40). The report recommended clinical correlation with Plaintiff's radicular symptoms; however, follow-up records contain no such evidence. The only records thereafter suggest that Plaintiff was scheduled for epidural injections for low

back pain. *See* (R. 215-16). The medical records do not indicate that such treatments ever occurred. Significantly, neither Dr. Ocampo nor any other examining or treating doctor commented on the import of such findings or suggested any limitations on the basis of the same. It is undoubtedly better practice for an ALJ to fairly describe the objective medical record in its entirety, and in this instance, mention of the MRI should have been made. However, because the error, if any, is harmless, no remand is warranted on this basis.

As the Commissioner points out, there is no rigid requirement in this circuit that an ALJ specifically refer to every piece of evidence so long as the ALJ's decision enables the court to conclude that the ALJ considered the claimant's medical condition as a whole. *See Dyer*, 395 F.3d at 1211. Here, Plaintiff did not allege back pain as a cause for disability when first applying for benefits. In fact, complaints of back pain prior to December 2006 and/or January 2007 (two months before the administrative hearing) are essentially nonexistent. At the hearing in February 2007, Plaintiff, who was represented by counsel, testified only tangentially regarding his back pain. To this extent, Plaintiff indicated that "the nerve or something" in his back causes the backs of his legs to become numb and he claimed difficulty sitting as a result. (R. 356). Although Plaintiff was represented at the hearing by the same counsel now raising the objections, counsel posed no questions to Plaintiff expounding in any way on his complaints of back pain or, more importantly, how such would affect his ability to work. Nor does counsel or the Plaintiff demonstrate, much less allege, any specific functional limitations resulting from Plaintiff's alleged back pain and/or numbness that the ALJ should have considered. My review of the medical record indicates that no doctor, treating or

11

otherwise, placed limitations on Plaintiff due to his back (or obesity as discussed below). Thus, Plaintiff is not entitled to relief on this claim.

Regarding Plaintiff's claimed obesity, his weight was documented repeatedly throughout the medical record, both before and after his alleged onset date, as fluctuating between 260 and 300 pounds. *See* (R. 129, 131-33, 170, 190, 218, 222, 224, 228, 230, 232). On three occasions, he was described as obese. (R. 190, 226, 255). In December 2005, his body mass index was 38.7. (R. 226). A body mass index of 30 or greater has been found to equate with obesity. *See Brown v. Barnhart*, 325 F. Supp. 2d 1265, 1271-73 (N.D. Ala. 2004). In the circumstances, the Plaintiff's obesity was a factor appropriate for consideration and I concur with Plaintiff that it is not clear what, if any consideration, the ALJ gave to the matter. *See* SSR 02-1p. However, as the Commissioner notes, a diagnosis of obesity does not equate with a finding of severity. *See, e.g., Wind v. Barnhart*, 133 Fed. Appx. 684, 690-91 (11th Cir. 2005) (unpublished)[9] (ALJ correctly determined obesity non-severe because it did not cause further degradation of her residual functional capacity). Nor does a body mass index. *See* SSR 02-1p. As with other impairments, obesity is a severe impairment only if the record evidence demonstrates that it affected Plaintiff's ability to perform basic work activities. *See id.;McCruter*, 791 F.2d at 1547. Here, while Plaintiff has demonstrated that the medical record documents his obesity, he has pointed to no evidence of record, including his own testimony, suggesting that his capacity for sedentary work was further reduced by his

---

[9]Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority. *See* 11th Cir. Rule 36-2; *United States v. Tamari*, 454 F.3d 1259, 1262 n.4 (11th Cir. 2006).

12

obesity during the period at issue.[10]  Plaintiff's failure to identify evidence of any additional limitation arising from obesity is fatal to his claim.

Again, although it clearly would have been better for the ALJ to specifically address Plaintiff's weight, other courts have found that an ALJ did not err in failing to do so in similar circumstances.  *See Forte v. Barnhart*, 377 F.3d 892, 896-97 (8th Cir. 2004) (although treating doctors noted that plaintiff was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and he did not testify that his obesity imposed additional restrictions.); *but see Early v. Astrue*, 481 F. Supp. 2d 1233, 1239-40 (N.D. Ala. 2007) (ALJ erred in failing to consider obesity as a factor in determining claimant's RFC where her treating physicians repeatedly listed obesity in their treatment notes).  In this case, no physician suggested that Plaintiff's obesity imposed any additional work-related limitations and Plaintiff did not allege any limitation in function as a result of his obesity in his application for benefits or during the hearing.  Counsel had every opportunity to develop the record in this regard but chose not to do so.  Under these circumstances, Plaintiff is not entitled to relief.  *See, e.g., Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (claimant never alleged any limitation in function as a result of his obesity in his application for benefits or during the hearing; thus, his claim was waived from being raised on appeal);

---

[10]To the extent Plaintiff's argument is understood to contend that the ALJ erred at step two by failing to find that either his back impairment or obesity constituted severe impairments, I disagree.  *See Jamison*, 814 F.2d at 588 (noting that, ". . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two."); *Council*, No. 04-13128 at 4 (holding in part that "the ALJ could not have committed any error at step two because he found that Council had a severe impairment or combination of impairments and moved on to the next step in the evaluation, which is all that is required at step two.").

*James v. Barnhart*, 177 Fed. Appx. 875, 878 n. 2 (11th Cir. 2006) (unpublished) (ALJ did not err by failing to find obesity a severe impairment where, during her own testimony, plaintiff did not claim that her obesity was a functional impairment); *Bowser v. Comm'r,* 121 Fed. Appx. 231, 236-37 (9th Cir. 2005) (unpublished) (holding that the ALJ did not err in failing to discuss obesity where, among other things, plaintiff did not claim it as disabling or raise it before the ALJ, and no physician opined that plaintiff's weight caused her afflictions).

Finally, insofar as Plaintiff complains that the ALJ failed to consider the combined effect of his impairments because he failed to consider his "back and weight problems," in light of the findings above, I am constrained to find that Plaintiff demonstrates no error warranting a remand on this basis. The decision reflects that the ALJ recognized her obligation to consider the combined effect of Plaintiff's impairments. For example, the ALJ acknowledged that "an impairment or combination of impairments is severe . . . if . . .," and when the claimant has a "severe impairment or combination of impairments," all medically determinable impairments must be considered in the remaining steps of the sequential analysis. (R. 19). Additionally, the ALJ found that, while Plaintiff had several impairments considered severe, he did not have "an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. 21). The Eleventh Circuit has held that findings such as these suffice in evidencing consideration of the combined effects of a claimant's impairments. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991); *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986). Further, as set forth above, the decision reflects that the ALJ considered his complaints of back pain. Despite the failure to acknowledge his obesity, there is no limitation

demonstrated, from the record or on this appeal, in connection with that condition that was not considered by the ALJ.  While the parties and the court would have been better served had the condition been specifically addressed, in the circumstances of this medical record, a remand would serve no useful purpose.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed.  I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

> Respectfully submitted this
> 27th day of June 2008.

_____
THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable James D. Whittemore, United States District Judge
Counsel of Record